IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHERRI R. PRICE, ) | |
| ) | |
| Petitioner, ) | Case No. CV 08-00155-S-REB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM DECISION** |
| COMMISSIONER, SOCIAL SECURITY ) | **AND ORDER** |
| ADMINISTRATION, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

Now pending before the Court is Sherri R. Price's Petition for Review (Docket No. 1) of the Social Security Administration's final decision denying her claim for Social Security disability benefits under Title II of the Social Security Act, 42 U.S.C. § 301, *et seq*. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.  ADMINISTRATIVE PROCEEDINGS

Petitioner applied for disability insurance benefits on November 15, 2004 (AR 51) with a protective filing date of October 26, 2004 (AR 69). She alleged disability since April 14, 2003 due to problems with her wrists, elbow, and eyes. (AR 72-73).

**MEMORANDUM DECISION AND ORDER - 1**

Petitioner's application was denied initially on February 7, 2005 (AR 23) and again after reconsideration on December 1, 2005 (AR 27). Petitioner then filed a timely request for a hearing before an administrative law judge ("ALJ"). (AR 32).

On August 16, 2007, the ALJ held a hearing in Boise, Idaho on Petitioner's claim. (AR 36, 395-429). Petitioner appeared and testified at the hearing, as did medical expert, Arvin Klein, M.D., (AR 45, 396) and vocational expert, Beth Cunningham (AR 42, 396). The Petitioner was represented by her attorney, who also appeared at the hearing. (AR 397).

At the time of the hearing, Petitioner was 54 years old. (AR 399). She graduated from high school and took college classes for one year. (AR 400). Petitioner testified that she is completely disabled due to problems with her right arm and wrists (AR 402 -4), her eyesight (AR 406 - 07), and arthritis (408 - 09).

Petitioner worked as a medical bills examiner for Blue Cross of Idaho for approximately twenty years. *Id.* While working for Blue Cross of Idaho in 1996, Petitioner tripped on a file cabinet and fell. (AR 412). In the process, she broke her right arm and elbow, tore the retina in her right eye, and damaged her wrist. *Id.* Petitioner testified that these injuries led to chronic problems with her wrists and elbow. (AR 400 - 405).

Petitioner testified that she was terminated from her employment with Blue Cross of Idaho, because she could not keep up with the work load due to swelling in her right arm, numbness and loss of sensation in her fingers, and extreme pain in both wrists. (AR 400 - 02). After she was terminated in April 2003, Petitioner filed a lawsuit for unlawful termination. (404). Petitioner testified that she "won the case and . . . they had to give me eight months of severance pay plus health insurance for the eight months." (AR 404-05).

**MEMORANDUM DECISION AND ORDER - 2**

At the time she was terminated from employment, Petitioner was being treated by Dr. Mark Clawson for carpal tunnel syndrome and tendonitis in her wrist. (AR 403). In December 1999, Dr. Clawson performed a carpal tunnel release surgery on Petitioner's right wrist, but Petitioner testified that the surgery did not relieve her pain. (AR 149, 403 - 04).

Petitioner also testified that her eye problems make it difficult to read small print, including print displayed on a computer screen. (AR 406). At the hearing, Petitioner testified that she uses a magnifying glass to read. *Id.* Petitioner testified that she suffers from on-going eye problems and has undergone multiple eye surgeries for cataracts and glaucoma and continues to seek treatment for chronic uveitis. (AR 407, 412).

With regard to her arthritis, Petitioner testified that she was treated by Dr. MacCarter in 2006. (AR 408, 376). Dr. MacCarter diagnosed Petitioner with a vitamin B27 deficiency and ankylosing spondylitis in her lower back. (AR 409, 376).

Petitioner testified that she generally spends her days listening to the radio, watching television, playing with her dog, monitoring her husband's fax machine and performing "[v]ery light" household chores. (AR 410). In addition, Petitioner helps her husband's business by submitting annual forms to maintain his contractor's license. (AR 411). Once, in May 2005, Petitioner applied for a position admitting patients at a hospital, but she did not hear back from the potential employer. (AR 405 - 06).

The medical expert at the hearing, Dr. Klein, testified that Petitioner has severe medical impairments but none of which meets a listing requirement. (Ar 417 - 18). Dr. Klein opined that Petitioner had a light residual functional capacity ("RFC") with limitations on lifting, sitting, standing, walking, ladders, bending, crouching, stooping, and crawling, coupled with limited field

**MEMORANDUM DECISION AND ORDER - 3**

of vision and near vision. (AR 418). Initially, Dr. Klein did not recommend limitations on manipulation (*i.e.,* reaching in all directions, handling, fingering, and feeling). *Id.* However, following questions from the ALJ, Dr. Klein agreed that it would be reasonable to reduce Petitioner's manipulative ability to frequent rather than continuous, "because of post carpal tunnel syndrome and complaints that the procedure did not help." *Id.*

At the hearing, the ALJ posed a hypothetical question to vocational expert Beth Cunningham. (AR 425-26). The hypothetical described an individual with an RFC limited to light work with the following limitations: "postural restrictions occasional," visual acuity limited to "occasional small print acuity," "manipulative limitation . . . limited to frequent fingering," and reaching or handling reduced to frequent. (AR 426). Based on this hypothetical, Cunningham determined that Petitioner "would not be able to perform past relevant work due to the constant near acuity needed." *Id.* Cunningham further testified that an individual with the above-described RFC and with Petitioner's age and background could perform the following jobs that exist in significant numbers in the national economy: claims adjuster, insurance clerk and clerical worker. (AR 426-27).

On September 14, 2007, the ALJ issued a decision denying Petitioner's claim. (AR 12). In the decision, the ALJ adopted the opinions of both testifying experts. (AR 15-20).

Petitioner appealed the ALJ's decision to the Appeals Council with new evidence in support of her claim. (AR 380-94). The new evidence consists of medical records dated between July 18, 2007 and November 15, 2007 from Dr. Reynolds, documenting Petitioner's continued treatment for her eyes. (AR 386-394). On March 14, 2008, the Appeals Council considered the additional evidence but ultimately denied Petitioner's request for review. (AR 4).

**MEMORANDUM DECISION AND ORDER - 4**

## II.  STANDARD OF REVIEW

The burden of proof rests upon Petitioner to establish an entitlement to disability benefits. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards.  42 U.S.C. § 405(g) (2005); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.  The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel.*

**MEMORANDUM DECISION AND ORDER - 5**

*Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987). Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases." *Id*. at 1095 (citation omitted).

### III.  DISCUSSION

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a five-step, sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (1997). The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). If the answer is yes, disability benefits are denied. 20 C.F.R. § 404.1520(b). In the instant action, the ALJ concluded that Petitioner has not engaged in substantial gainful activity at any time relevant to the decision. (AR 16).

**MEMORANDUM DECISION AND ORDER - 6**

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). Here, the ALJ found that Petitioner "has a combination of severe physical impairments which impose significant work-related limitations." (AR 16).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the answer is yes, the claimant is disabled and benefits are awarded. 20 C.F.R. § 404.1520(d). In this respect, the ALJ concluded that Petitioner's impairments, although severe, do not meet or equal any listed impairment. (AR 16, 19).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Here, the ALJ concluded that Petitioner has the residual functional capacity to perform a limited range of light work. (AR 17, 19). Based on the testimony of medical expert, Arvin Klein, the ALJ determined that Petitioner can lift and carry ten pounds frequently and 20 pounds occasionally, can stand and/or walk for six hours in an eight-hour work day, and can sit for six hours in an eight-hour work day. *Id.* In addition, the ALJ determined that Petitioner can perform frequent fingering, handling and reaching. *Id.* Given Petitioner's visual impairments, the ALJ determined that she has a limited field of vision and her "ability to perform work requiring near acute vision is reduced to frequent." *Id.* Given this residual functional capacity, the ALJ concluded that Plaintiff cannot perform her past work as a medical bills examiner. (AR 18, 20).

**MEMORANDUM DECISION AND ORDER - 7**

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). Based on the vocational expert's testimony, the ALJ found that claimant retains the ability to do alternate work and there are jobs that exist in significant numbers in the national economy that Petitioner can perform. (AR 18). Specifically, the ALJ determined that Petitioner could perform the jobs of claims adjuster, insurance clerk, and clerical worker. (AR 18-19). Accordingly, the ALJ concluded that Petitioner is not disabled as defined in the Social Security Act. (AR 19, 20).

**B.    Analysis**

Petitioner takes issue with four aspects of the ALJ's decision: (1) the ALJ's treatment of the opinion of the treating physician, Dr. Adam Reynolds, regarding Petitioner's eyesight; (2) the ALJ's failure to discuss the opinion of examining physician, Dr. Richard Radnovich; (3) the ALJ's finding that Petitioner is not credible; (4) the ALJ's rejection of lay testimony from Petitioner's husband and a neighbor; and (5) the ALJ's residual functional capacity determination. *See Petitioner's Brief* (Docket No. 15).

      **1.    The ALJ's Rejection of Treating and Examining Physicians' Opinions**

Generally, in cases such as these, administrative judges and reviewing courts consider medical opinions differently depending upon whether the source is a treating physician, an examining physician, or a nonexamining physician. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Courts give the greatest weight to treating physicians and, "where the treating

**MEMORANDUM DECISION AND ORDER - 8**

doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991)). Further, "[e]ven if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)).  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.*

### a.     Dr. Reynolds' Opinion

The ALJ rejected  "Dr. Reynolds' opinion of disability" on the basis that it "is controverted by substantial evidence in the record and is not supported by the physician's treatment records of any objective, clinical findings by him." (AR 17).  Petitioner argues this rejection is in error, because Dr. Reynolds' opinion is consistent with the medical record as a whole.  *Petitioner's Brief*, pp. 7-8 (Docket No. 15).

As explained more fully below, the ALJ's decision to reject Dr. Reynolds' opinion does not constitute reversible error, because the rejection was limited to Dr. Reynolds' ultimate conclusion that Petitioner is disabled because her correctable vision is less than 20/40, and the ALJ's decision to reject this limited portion of Dr. Reynolds' opinion is supported by specific and legitimate reasons.

In order to determine the appropriate standard to apply to a treating physician's opinion, the ALJ must first determine whether the treating physician's opinion is contradicted by another doctor.  Here, the only other doctor directly addressing the issue of disability is the medical expert

**MEMORANDUM DECISION AND ORDER - 9**

who testified at the hearing. That witness, a non-examining doctor, opined that Petitioner's eye problems do not meet the criteria necessary for a listed impairment but nonetheless considered the eye problems in his determination of Petitioner's residual functional capacity. (AR 417). Because the doctors disagree on the issue of Petitioner's disability, the ALJ could reject Dr. Reynolds' opinion, if the ALJ identified specific and legitimate reasons for doing so.

The ALJ rejected Dr. Reynolds' opinion, in part, on the basis that it was inconsistent with "substantial evidence in the record." (AR 17). However, the only evidence in the record cited in the ALJ's decision to reject Dr. Reynolds' opinion is a report from Dr. Anderson from November 2004 suggesting that Petitioner had correctable vision of 20/20 in both eyes. *Id.*

Dr. Anderson, who had treated Petitioner since 1994 (AR 311-375), referred her to Dr. Reynolds in October 2006 indicating that Petitioner was a "very complicated patient." (AR 311). The October 31, 2006 letter From Dr. Anderson to Dr. Reynolds provides a concise history of Petitioner's on-going eye problems, beginning in April 1994 with "elevated intraocular pressures and a superior retinal detachment." *Id.* Dr. Anderson noted that Petitioner underwent a vitrectomy and cataract surgery in 1998, suffers from intractable irtis and possible ankylosing spondylitis, has been treated for "steroid-induced glaucoma with increasing medications" and underwent a trabulectomy in January 2006 that was "complicated by a large choroidal and then spontaneous dislocation of her IOL [intraocular lens], necessitating IOL removal." *Id.*

Dr. Reynolds has treated Petitioner since November 3, 2006. (AR 276-310). Dr. Reynolds diagnosed Petitioner with "a complex case of chronic open-angle uveitic B-27-related glaucoma OU" and informed Dr. Anderson that "[w]ithout intervention in the fairly near future, [Petitioner] is surely going to go blind in the left eye." (AR 307-08).

**MEMORANDUM DECISION AND ORDER - 10**

On February 12, 2007, Dr. Reynolds performed two procedures on Petitioner's left eye. (AR 292). These procedures included a glaucoma tube shunt and a secondary IOL placement. *Id.*

Given this extensive history of increasingly severe eye problems, the ALJ cannot properly rely on Dr. Anderson's report from November 2004 as a legitimate reason or "substantial evidence" to reject Dr. Reynolds' opinion from July 2007. Nonetheless, this error is ultimately harmless, because the ALJ's rejection of Dr. Reynolds' opinion was limited to the final conclusion regarding disability, and this rejection was supported by the sufficiently specific and legitimate reason that the ALJ's responsibility to determine "disability" is distinct from the manner and ultimate conclusion of Dr. Reynold's opinion from July 2007. In that regard, the ALJ rejected Dr. Reynolds' opinion solely as to the ultimate conclusion that Petitioner "is visual disabled as neither eye is correcting to 20/40 right now." (AR 274). In rejecting this ultimate conclusion, the ALJ correctly noted that a finding of "disability" in the Social Security context is an administrative determination that requires application of a statutory definition. The ALJ's decision states, "in opining that the claimant is 'disabled,' due to correctable vision of no better than 20/40 in either eye, Dr. Reynolds assumes the expertise of a vocational expert. . . . Furthermore, a finding of disability is reserved to the Commissioner of Social Security, pursuant to Social Security Ruling 96-4p." (AR 17). In addition, Petitioner concedes that "Dr. [Reynolds'] use of the word 'disabled' is clearly the meaning of the word as used by the general public and not necessarily with Social Security's definition." *Petitioner's Brief*, pp. 7-8 (Docket No. 15). Thus, the ALJ's decision to reject Dr. Reynolds' ultimate conclusion concerning Petitioner's disability is that the treating physician used the term "disability" in a manner distinct from and inconsistent with the

**MEMORANDUM DECISION AND ORDER - 11**

term's statutory meaning in the Social Security context. Accordingly, the decision to reject Dr. Reynolds' ultimate conclusion regarding disability does not constitute reversible error.

### b. Dr. Radnovich's Opinion

In contrast, however, to the manner in which the opinion of Dr. Reynolds was addressed, the ALJ's complete failure to address Dr. Richard Radnovich's opinion regarding Petitioner's impairments and residual functional capacity does constitute reversible error.

At the request of the Social Security Administration, Dr. Radnovich reviewed Petitioner's medical history and examined Petitioner on December 28, 2004 (AR 174- 77). Dr. Radnovich noted that Petitioner alleged she was disabled because of problems associated with her wrist, elbow, right upper extremity, glaucoma, and detached retina. (AR 174). Dr. Radnovich diagnosed Petitioner with reflex sympathetic dystrophy ("RSD"), "a complication of some orthopedic procedures" that, once established, "causes severe pain and is challenging to treat." (AR 177). Dr. Radnovich also noted that Petitioner's "hair pattern, skin coloration, and ostopenia (loss of bone mineralization) are all suggestive of this condition." *Id*.

Dr. Radnovich also made the following conclusion regarding Petitioner's residual functional capacity:

> Repetitive lifting, carrying, pushing, or pulling objects greater than five pounds would be restricted by her medical condition. Fine manipulation would be restricted by her medical condition. Keyboarding and data entry would be possible but significantly challenged by her medical problems. These restrictions do address the functional capacity, however, they do not address the pain that accompanies RSD. RSD patients can return to a fairly high functional status if the disease is treated early and aggressively.

*Id.*

**MEMORANDUM DECISION AND ORDER - 12**

Without referring to Dr. Radnovich's report, the ALJ determined that Petitioner was able to lift five pounds frequently and ten pounds occasionally and could perform frequent fingering, handling and reaching. (AR 19). Thus, the ALJ's residual functional capacity determination constitutes an implicit rejection of Dr. Radnovich's opinion, which was formed after an examination of the Petitioner, in favor of the testimony of Dr. Klein, who did not examine the Petitioner.

The ALJ may reject the opinion of an examining physician in favor of a consulting physician only for specific, legitimate reasons for doing so, which are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d at 831. This standard applies even if the examining doctor's opinion is contradicted by another doctor. *Id.* Moreover, the opposing opinion of a nonexamining doctor alone is not sufficient to meet the standard. *Id.*

The ALJ did not discuss Dr. Radnovich's opinion in any manner. Such an error is not harmless on this record, where Dr. Radnovich has diagnosed a condition--reflex sympathetic dystrophy–that reasonably supports Petitioner's subjective complaints, which in turn calls into question the ALJ's decision that the Petitioner was not credible and further discredits the ALJ's residual functional capacity determination. *See* SSR 03-2p, 2003 WL 22399117 (stating "[i]t is characteristic of [reflex sympathetic dystrophy] syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual"). Therefore, the case must be remanded to the ALJ for consideration of Dr. Radnovich's opinion.

**MEMORANDUM DECISION AND ORDER - 13**

    **2.**    **Credibility Determinations**

The ALJ did not find credible the Petitioner's pain testimony and the corroborating testimony from her husband, Greeley Price (AR 123), and a neighbor, Teri Weissrock-Engler (AR124). (AR 18). Petitioner argues that this was error.

    **a.**    **Rejecting Petitioner's Subjective Pain Testimony**

In evaluating the credibility of a claimant's subjective pain testimony, an ALJ must engage in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir.2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. at 1036 (internal citations and quotation marks omitted). The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996)). "If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Vasquez v. Astrue*, 547 F.3d 1101, 1104-1105 (9th Cir. 2008).

Here, Petitioner has provided objective medical evidence of an underlying impairment. As the ALJ describes, objective medical evidence supports the following impairments:

> [P]ossible ankylosing spondylitis; bilateral uveitis; status-post vitrectomy, repair of detached retina, trabulectomy, radial head fracture of the right shoulder and right carpal tunnel release; osteoarthirtis of the matacarpal joints of both hands; and degenerative changes of the right SI joint and disc space narrowing at the L5-Si level of the lumbar spine.

**MEMORANDUM DECISION AND ORDER - 14**

(AR 19). In addition, Petitioner's subjective pain testimony is supported by Dr. Radnovich's diagnosis of reflex sympathetic dystrophy, physically manifested by hair pattern, skin coloration, and ostopenia. (AR 177).

In light of this objective medical evidence, the ALJ could not lawfully reject Petitioner's subjective pain testimony without specific, clear and convincing reasons for doing so. The ALJ rejected Petitioner's subjective pain testimony for six primary reasons:

(1) Only one physician, Dr. Reynolds, has ever opined that Petitioner is disabled;

(2) Petitioner was able to work after a right carpal tunnel release in 1999 and was able to keep working until she was fired in April 2003;

(3) Petitioner's earlier workers' compensation claim suggests that Petitioner "has a financial interest in presenting herself as a more dysfunctional individual than she actually is;"

(4) Petitioner applied for a job in 2005;

(5) Petitioner assists her husband's business by reviewing faxes, e-mail, and filing his annual licensing requirements; and

(6) Petitioner performs light household chores and drives a four-wheel vehicle.

(AR 18).

Although arguably specific, the ALJ's reasoning does not reach the clear *and* convincing measure. First, while it is true that Dr. Reynolds is the only physician to opine that Petitioner is disabled, the ALJ elsewhere completely discounted such an opinion on the basis that Dr. Reynold's opinion that the Petitioner was disabled invaded the administrative role if and was reserved for the Commissioner. Moreover, Petitioner's credibility, to the extent that it can be

**MEMORANDUM DECISION AND ORDER - 15**

tested by a doctor's opinion of disability, was–in fact–corroborated by Dr. Reynold's testimony and the fact that other doctors had not rendered an opinion of disability does not necessarily damage her credibility.  In other words, the truthfulness of Petitioner's testimony can be sound and (as the ALJ determined) her impairments may be severe, even though physicians' opinion on disability may implicate varying understandings of that term and  may or may overlap or invade upon the ALJ's statutory responsibility to make such a determination in the Social Security context.

Second, Petitioner lost her job in 2003 because she could no longer perform the functions of her job due to her physical impairments.  Therefore, the fact that she tried to work from December 16, 1999 until April 2003 is not persuasive evidence of her present ability to work and is moreover not evidence that damages her credibility, given the timeline of such efforts to work.

Third, every claimant has a pecuniary interest in appearing disabled.  Although such an interest is a legitimate point of inquiry for the ALJ in assessing credibility, it is an insufficient basis in conjunction with other facts in this record to justify a finding that the Petitioner is not credible.

Fourth, the fact that Petitioner applied for one job in 2005 does indicate some degree of willingness to work.  However, it does not reflect the capacity for work.  Moreover, there is evidence in the record demonstrating Petition was not employable in 2005.  Specifically, in March 2005, the Idaho Division of Vocational Rehabilitation issued to Petitioner a "Certificate of Ineligibility" indicating that she was not eligible for Vocational Rehabilitation services, because the agency could not establish "[t]he ability to achieve an employment outcome."  (AR 122).  Such

**MEMORANDUM DECISION AND ORDER - 16**

evidence undermines the ALJ's contention that Petitioner was not credible because she once applied for work in 2005.

Finally, Petitioner's reported daily activities are not inconsistent with her pain testimony. "The Social Security Act does not require that petitioners be utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, Petitioner's light activities, working for an hour each week and an additional hour each year in support of her husband's business, performing light household chores, and driving to her medical appointments in a four-wheel drive vehicle; do not contradict Petitioner's testimony regarding disabling pain and do not render her ineligible for benefits.

In sum, the reasons set forth by the ALJ do not provide clear and convincing support for his decision to reject Petitioner's testimony. This conclusion is also bolstered by the fact that the decision shows no consideration by the ALJ of the diagnosis of reflex sympathetic dystrophy, a diagnosis that would likely support Petitioner's pain testimony.

There is case law in this circuit holding that the Commissioner must accept as true the Petitioner's subjective symptom testimony where, as here, the ALJ has rejected such testimony without adequate support. *See Varney v. Secretary of Health and Human Services*, 859 F.2d 1396, 1398-99, 1401 (9th Cir.1988). However, in this case, such an outcome is not warranted, as there are other outstanding issues that must be resolved, *e.g.,* the proper weight to give Dr. Radnovich's opinion, and it is not clear from the administrative record that the ALJ would have to award benefits if the Petitioner's excess pain testimony were credited. *Id.*; *Vasquez v. Astrue*, 547 F.3d at 1106 (holding all outstanding issues must be resolved before a disability determination may be

**MEMORANDUM DECISION AND ORDER - 17**

made). Instead, it makes more sense to provide the ALJ with an opportunity to re-consider Petitioner's testimony at the same time he considers the opinion of examining physician, Dr, Radnovich. In other words, Petitioner's testimony must be considered in light of all the medical evidence in the record before the credibility and, ultimately, the disability determinations are made.

### b. Rejecting Lay Witness Statements

Petitioner submitted two statements in support of her claim from third parties. One statement is from Petitioner's husband, Greeley Price, (AR 123) and the other is from a neighbor and friend, Teri Weissrock-Engler (AR 124). Both statements largely corroborate Petitioner's testimony regarding her limited daily activities.

Such third party testimony can be disregarded only if the ALJ provides "specific reasons" for doing so. *Regennitter v. Commn'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir.1999). Here, the ALJ rejected "the functional limitations identified by third parties" on the basis that "[t]he opinions of these individuals is clearly outweighed by the medical evidence of record, as a whole." (AR 18). This general statement does not meet the standard, because it is not sufficiently specific. Therefore, upon remand, the ALJ must also reevaluate the credibility of these corroborating statements.

### 3. Residual Functional Capacity

To the extent that the ALJ on remand changes any portion of his decision regarding the opinion of Dr. Radnovich, or the credibility of Petitioner and her supporting witnesses, the ALJ must also reconsider Petitioner's residual functional capacity.

**MEMORANDUM DECISION AND ORDER - 18**

## IV.  CONCLUSION

The ALJ made several reversible errors in this case.  Upon remand, the ALJ must reevaluate: (1)  the opinion of examining physician, Dr. Radnovich; (2) Petitioner's credibility; (3) the third party witnesses' credibility; and (4) if the decision changes in any regard upon reevaluation, the ALJ must also consider Petitioner's residual functional capacity.

## V.  ORDER

Based on the foregoing, Petitioner's request for review is GRANTED.  The Commissioner's decision that Petitioner is not disabled within the meaning of the Social Security Act is reversed and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).



DATED:  **January 7, 2009**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 19**